**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

HORMEL FOODS CORPORATION,
a Delaware corporation,

Plaintiff,

v.

CEREOL, S.A., a French corporation; ERIDANIA BEGHIN-SAY, a French corporation; and KOIPE SOCIEDAD ANONIMA, a Spanish corporation,

Defendants.

Civil No. 01-2243 (JRT/FLN)

**MEMORANDUM OPINION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

---

David F. Loefller, KRUKOWSKI & COSTELLO, S.C., 7111 West Edgerton Avenue, Milwaukee, WI, 53220; Steven J. Wells, DORSEY & WHITNEY, LLP, Suite 1500, 50 South Sixth Street, Minneapolis, MN, 55402-1498, for plaintiff.

Thomas K. Cauley, Jr. SIDLEY AUSTIN BROWN & WOOD, Bank One Plaza, 10 S. Dearborn Street, Chicago, Illinois, 60603; R.J. Zayed and Ann N. Cathcart Chaplin, FISH & RICHARDSON, P.C., P.A., 3300 Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN, 55402, for defendants.

Plaintiff Hormel Foods Corporation ("Hormel") brings this action to enforce a contractual promise originally made by defendant Eridania Beghin-Say ("EBS") to cause the Carbonell brand to be transferred to a limited liability company of which Hormel is a member. Plaintiff has moved to enjoin defendants, particularly Cereol S.A, ("Cereol"),

FILED DEC 1 8 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD.
DEPUTY CLERK

EBS's successor to the contractual agreement at issue, from transferring the Carbonell brand in the sale of Koipe Sociedad Anonima ("Koipe") to a Spanish corporation, Sos Cuetara.

On Friday, December 14, 2001, the Court heard oral argument on plaintiff's motion for preliminary injunctive relief. Shortly thereafter, the Court issued its decision denying plaintiff's motion. This memorandum opinion sets forth the reasons for that decision.

## BACKGROUND

### I. The Parties

Hormel, a Minnesota corporation organized under the laws of Delaware, is engaged in the production of food commodities, including the production of processed brand food products for sale by wholesale and retail firms and is also engaged in the general marketing and distribution of identifiable brand food products.

EBS is a French corporation with its principal place of business in Neuilly-sur-Seine, France. EBS is also known by its trade name "Medeol." EBS and its subsidiaries are engaged in the business of processing, distribution and sale of a variety of food products. Sometime in 2001, EBS "de-merged" into four separate companies.[1] The "de-merged" company that succeeded to EBS's contractual obligations with Hormel is Cereol. Like EBS, Cereol is a French corporation with its principal place of business in Neuilly-sur-Seine, France.

[1] According to defendants, EBS ceased to exist as of July 1, 2001.

Koipe is a corporation organized under the laws of Spain. Koipe was originally a subsidiary of EBS who controlled a majority interest in Koipe. After the de-merger, Cereol acquired EBS's majority and controlling interest in Koipe and in turn, control of the Carbonell brand at issue in this case.

## II. Contractual Negotiations Between EBS and Hormel

In 1998, EBS, through a consultant, approached Hormel concerning a possible joint enterprise to distribute olive oil products manufactured by EBS and its subsidiaries in Italy and Spain. In an effort to gauge Hormel's interest in a business relationship with EBS, the independent consultant traveled to Minnesota and met with Hormel in Minnesota. After preliminary discussions yielded interest on both sides, EBS representatives traveled to Minnesota with the consultant to make a substantial presentation to Hormel executives.

More extensive negotiations between the parties followed these preliminary meetings. Negotiations took place over the telephone, by letter and via email between EBS representatives located in France and the United States, and Hormel employees in Minnesota. The parties also held five or six meetings in New York.

During negotiations, EBS represented that it controlled two olive oil brands, Carapelli and Carbonell. According to EBS, the Carapelli-branded olive oil was produced in Italy by Carapelli Firenze, s.p.a. ("Carapelli Italy"), a wholly-owned subsidiary of EBS. Carbonell-branded products were produced by Koipe in Spain, of which EBS owned a majority and controlling interest (51%).

## III. March 22, 1999 Agreement Creating Carapelli USA LLC

According to Hormel, the parties' negotiations led to a mutual agreement to create a joint venture to control the marketing and distribution of Carapelli and Carbonell-branded products in the United States. The joint venture took the form of a limited liability company called Carapelli USA LLC, organized under the laws of Delaware. As part of the agreement, Hormel agreed to contribute its existing, though limited, olive oil business to the control of the LLC, along with a substantial cash contribution. For its part, EBS agreed to contribute its Carapelli and Carbonell brands to the control of the LLC and to cause its subsidiaries, Carapelli Italy and Koipe, to enter into distribution agreements with the LLC.

Although the transfer of the Carapelli brand occurred smoothly, EBS indicated that more time was needed before it could transfer the Carbonell brand to the LLC. According to EBS, the culture of the Koipe board was such that, although EBS could simply order the transfer of the control of the brand to the joint venture, the minority shareholders of Koipe might cause problems with the implementation of the transfer. Accordingly, the parties agreed that EBS would have one year to effectuate the transfer of the Carbonell brand. To ensure that EBS fulfilled this negotiated promise, the parties included the following section in the Agreement, which provides, in relevant part:

> EBS further undertakes that within one year from the Implementation Date, it will cause Groupe Koipe to add the Carbonell brand to the Joint Venture and agree to supply the Joint Venture with product to bear that brand by entering into a Supplementary Distribution Agreement. . . . In the event EBS does not complete this undertaking, from a time beginning one year after the Implementation Date and concluding when EBS has completed this undertaking, EBS will pay Hormel 7.75% of the Net Sales (as defined in the Distribution Agreement) made directly or indirectly in the Territory

> under the Carbonell brand by any EBS Subsidiary, including the sales made by Group Koipe's present distributor in Florida or elsewhere. For avoidance of doubt, once the Carbonell trademark for the United States, excluding Florida, is brought into the Joint Venture, there will be no further payments due on account of any delay in arranging the contribution of the Florida business.

LLC Agreement § 21.23.

## IV. Extensions of Contractual Obligation and Takeover Bid of Koipe

The implementation date of the LLC Agreement was August 1, 1999. EBS thus had until August 1, 2000 to cause Koipe to transfer control of the Carbonell brand to the joint venture. However, as the one-year deadline approached, Cereol, which had then succeeded to EBS's contractual obligations, informed Hormel that an extension was necessary given the politics of the Koipe board. Hormel agreed to extend the time for Cereol to perform and has since granted Cereol additional extensions.

On October 2, 2001, Koipe was the subject of an unsolicited take over bid by the Spanish corporation, Sos Cuetara.[2] On October 19, 2001, Cereol announced that it had definitively and irrevocably agreed to sell its equity holding in the capital stock of Koipe to Sos Cuetara. Upon learning of these events, Hormel contacted Cereol, reminding it of its contractual obligation and requesting assurance that the purchaser will agree by written agreement to undertake Cereol's obligation to add the Carbonell brand to the LLC. Cereol responded shortly thereafter and explained that because the transaction in question only deals with the sale of shares and the price, Cereol was not in a position to

[2] According to affidavit testimony from Louis De Carlos Bertran, as a result of a change in ownership of Cereol's parent company in July or August 2001, Cereol was required by Spanish law either to increase its ownership in Koipe to 75% or to relinquish its controlling interest in Koipe.

obtain any specific commitments from Sos Cuetera. Cereol further explained in a November 30, 2001 letter that it believed the Agreement permitted it to choose between contributing the Carbonell brand or paying Hormel the 7.75% of any sales of Carbonell products in the United States. Interpreting these responses as a clear repudiation and anticipatory breach of the Agreement, Hormel brought this action for breach of contract and moved for injunctive relief.

## ANALYSIS

### I. Preliminary Injunction

According to Hormel's proposed order, Hormel moves the Court for a preliminary injunction enjoining defendants from selling or otherwise transferring the right to use the Carbonell brand to anyone other than Carapelli USA LLC; to enjoin the sale of Carbonell brand products in the United States and Puerto Rico and require defendants to transfer control of the right to use the Carbonell brand in the United States to Carapelli USA LLC. Hormel argues that, absent an injunction, the sale of Koipe will close, this Court will lose control over the brand and Hormel will suffer irreparable harm from defendants' breach of contract. For the reasons that follow, the Court finds that Hormel has failed to sustain its burden for the issuance of injunctive relief.[3]

[3] Defendants have argued that the present dispute is not properly before the Court because the LLC Agreement plainly requires the parties to resolve their dispute in arbitration. Defendants also argue that the Court lacks personal jurisdiction over Koipe. While these are important issues which should be addressed early in this litigation, the Court will limit its ruling to the merits of plaintiff's motion.

## A. Standard of Review

In the Eighth Circuit, a preliminary injunction may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the preliminary injunction; 3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Injunctive relief is considered to be a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

## B. Dataphase Factors

As an initial matter, the Court notes that Hormel appears to have a strong claim for breach of contract against Cereol. Defendants argue that the Agreement gives Cereol the option to either transfer the Carbonell brand or pay 7.75% of net sales for a reasonable time. The plain language of the Agreement does not support this reading, however. Section 21.23 of the Agreement provides, in relevant part:

> EBS/[Cereol] further undertakes that within one year from the Implementation Date, it **will cause** Groupe Koipe to add the Carbonell brand to the Joint Venture and agree to supply the Joint Venture with product to bear that brand by entering into a Supplementary Distribution Agreement . . . . In the event EBS/[Cereol] does not complete this undertaking, **from a time beginning one year after the Implementation Date and concluding when EBS/[Cereol] has completed this undertaking,** EBS/[Cereol] will pay Hormel 7.75% of the Net Sales (as defined in the Distribution Agreement) made directly or indirectly in the Territory under the Carbonell brand by any EBS/[Cereol] Subsidiary,

> including the sales made by Group Koipe's present distributor in Florida or elsewhere.

(Emphasis added). The above-quoted language and emphasized portions support Hormel's position that Cereol has a mandatory obligation to transfer the Carbonell brand to the LLC and that the 7.75% is designed as a penalty for a **delay** in performing that obligation. Although the parties' course of dealing in recent months and Hormel's grant of numerous extensions may raise questions of waiver or contractual modification of the original Agreement, the Court need not resolve these issues at this preliminary stage of the litigation.

Ultimately, however, the Court will deny this motion because Hormel has not persuaded the Court that it will suffer the type of immeasurable and irreparable harm necessary to issue the injunction it seeks. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987) ("The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction."). "'The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.'" *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996) (quoting *Beacon Theatres, Inc v. Westover*, 359 U.S. 500, 506-07 (1959)); *Packard Elevator v. Interstate Commerce Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986).

In this case, the Court finds that any damages Hormel may suffer from the loss of its ability to market olive oil and other products under the Carbonell brand are measurable in money damages. *NewLeaf Designs, LLC v. BestBins Corp.*, 168 F. Supp. 2d 1039, 1045 (D. Minn. 2001) (availability of monetary damages precludes finding of irreparable harm). While Hormel emphasizes that calculating monetary

damages are more difficult in this case because the Carbonell brand has not been widely sold in the United States, the Court believes there are adequate baselines from which damages can be measured. The Carbonell brand has been distributed and marketed in Florida for some time through a distributorship agreement between Koipe and another distributor. Moreover, Hormel and Koipe have recently conducted a feasibility study to gauge the sale of Carbonell brand products in the United States. The results of this study provides another representative baseline for calculating Hormel's damages.

The public interest factor and balance of harms also do not clearly weigh in favor of Hormel. Certainly, there is a public interest in enforcing reasonable contracts and holding individuals to the contractual promises they make. But the Court cannot ignore the status of events in Spain. Nearly two months ago, Cereol irrevocably and publicly committed to sell its stock in Koipe to Sos Cuetera. Since then, it has deposited its shares with a Spanish bank with instructions that these shares are in acceptance of the offer made by Sos Cuetera. The offer has been approved by the Spanish Securities and Exchange Commission. Furthermore, Sos Cuetera's takeover of Koipe involves **all** of Koipe's shares, including those held by Koipe's minority shareholders.[4] Thus, the issuance of any injunction would have a disruptive effect on many parties, including third parties not directly involved in this litigation.

---

[4] Cereol also emphasizes that it actually owns only 1% of the 51% controlling share in Koipe and that Cereol Participations, not sued here, owns the other 50%. While the relationship between Cereol S.A. and Cereol Participations is not entirely clear, this raises an additional question as to how much control Cereol in fact had to cause Koipe to transfer the Carbonell brand to the joint venture.

Finally, although Hormel contends that it seeks only the narrow relief of carving out Cereol's right to the Carbonell brand from the sale, it is not clear to the Court how this could be accomplished. As the Court noted and as defendants emphasized at the motion hearing, this is a sale of Koipe's stock. There are no asset agreements involved in the transaction. Moreover, it is not clear that Cereol's right over the Carbonell brand is a separate independent asset. Rather, in the Court's view, Cereol's control over the Carbonell brand derived from it having a majority interest in Koipe stock, which, at this point, it no longer has.

**CONCLUSION**

Thus, for all the foregoing reasons, plaintiff's motion for a preliminary injunction is denied as ordered on December 14, 2001.

DATED: Dec. 18, 2001
at Minneapolis, Minnesota.

John R. Tunheim
JOHN R. TUNHEIM
United States District Judge