**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

HORMEL FOODS CORP., a Delaware corporation,

Plaintiff,

v.

CEREOL, S.A., a French corporation, ERIDANIA BEGHIN-SAY, a French corporation, KOIPE SOCIEDAD ANONIMA, a Spanish corporation, and CEREOL PARTICIPATIONS, S.A., a French corporation,

Defendants.

Civil No. 01-2243 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER**

---

Steven J. Wells, DORSEY & WHITNEY, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402; and David F. Loeffler, KRUKOWSKI & COSTELLO, 7111 West Edgerton Avenue, Milwaukee, WI 53220, for plaintiff.

Thomas K. Cauley, SIDLEY AUSTIN BROWN & WOOD, Bank One Plaza, 10 South Dearborn Street, Chicago, IL 60603; and Ann Cathcart Chaplin and R.J. Zayed, FISH & RICHARDSON, 3300 Dain Rauscher Plaza, 60 South Sixth Street, Minneapolis, MN 55402, for defendants Cereol, S.A. and Cereol Participations, S.A.

David T. Schultz, Michael T. Nilan, and Cynthia Arends, HALLELAND LEWIS NILAN SIPKINS & JOHNSON, P.A., 220 South Sixth Street, Suite 600, Minneapolis, MN 55402, for defendant Koipe Sociedad Anonima.

FILED ____________
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____________
DEPUTY CLERK ____________

Plaintiff Hormel Foods ("Hormel") has sued defendants for breach of contract, promissory estoppel, declaratory judgment, and fraud. This matter is now before the Court on three motions: (1) Hormel's motion to file a Second Amended Complaint; (2) a motion to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure by defendants Cereol, S.A. and Cereol Participations;[1] and (3) a motion to dismiss under Rules 12(b)(2) and (6) by defendant Koipe Sociedad Anonima.[2]

## BACKGROUND

### I. Parties

Plaintiff Hormel is a food corporation located in Minnesota, and organized under Delaware law. Defendant Eridania Beghin-Say ("EBS") was a French corporation that processed and sold a variety of food products. Sometime before July 1, 2001, EBS split apart into four separate companies. Defendant Cereol, S.A. ("Cereol") is one of these companies. Cereol succeeded to EBS's contractual obligations with Hormel.

Defendant Koipe Sociedad Anonima ("Koipe") was originally a subsidiary of EBS. During most of the period relevant to this case, Koipe controlled the Carbonell brand that is at issue here. After EBS split apart, its majority interest in Koipe was taken

---

[1] These defendants have also moved to dismiss for lack of personal jurisdiction over Cereol Participations. However, Cereol, S.A. and Cereol Participations have since merged, and defendants have withdrawn this motion.

[2] Both Hormel and Koipe Sociedad Anonima have moved to submit additional materials regarding Koipe's motions. The Court will grant the motions of both parties.

over by Cereol. Defendant Cereol Participations, S.A. ("Cereol Participations") was a wholly-owned subsidiary of Cereol.

## II. Contractual Negotiations Between EBS and Hormel

In 1998, an independent consultant working for EBS approached Hormel to discuss a possible joint venture to distribute EBS-manufactured olive oil products in the United States. EBS's consultant traveled to Minnesota to personally gauge Hormel's interest in such a relationship. EBS representatives eventually traveled to Minnesota for a full presentation to Hormel executives. Extensive negotiations between the parties followed. Negotiations took place over the telephone, by letter and email between EBS representatives located in France and the United States, and Hormel employees in Minnesota. The parties also held several meetings in New York City.

During negotiations, EBS represented that it controlled two olive oil brands, Carapelli and Carbonell. According to EBS, the Carapelli brand of olive oil was produced in Italy by Carapelli-Italy, a wholly-owned subsidiary of EBS. Carbonell brand products were produced by Koipe, of which EBS owned a controlling interest.

## III. Agreement Creating the LLC

On March 22, 1999, several parties executed an agreement creating a joint venture to control the marketing and distribution of Carapelli and Carbonell-branded products in the United States (the "LLC Agreement" or "Agreement"). Parties signing the Agreement were Hormel, EBS, and two EBS subsidiaries, Carapelli-Italy and Carapelli, Inc. The joint venture took the form of a limited liability company called Carapelli USA

LLC (the "LLC"). Under the Agreement, Hormel agreed to contribute its existing olive oil business to the LLC's control, along with a substantial cash contribution. EBS agreed to contribute its Carapelli and Carbonell brands to the LLC and to cause its subsidiaries, Carapelli-Italy and Koipe, to enter into distribution agreements with the LLC.[3]

The Carapelli brand would be transferred to the LLC without any problems. EBS indicated, however, that it needed more time to transfer the Carbonell brand. According to defendants, the politics of the Koipe board of directors complicated any transfer of Carbonell. Although EBS controlled Koipe and could simply direct it to transfer the Carbonell brand, EBS did not prefer this method. EBS apparently noted that Koipe's minority shareholders could block the transfer, so the Agreement gave EBS time to convince Koipe's minority shareholders that transfer to the LLC was a good idea. Accordingly, the parties agreed that EBS would have one year to transfer the Carbonell brand. To ensure that EBS fulfilled this promise, the parties included the following provision in the Agreement:

> [W]ithin one year from the Implementation Date, [EBS] will cause Groupe Koipe to add the Carbonell brand to the Joint Venture and agree to supply the Joint Venture with product to bear that brand by entering into a Supplementary Distribution Agreement. . . . In the event EBS does not complete this undertaking, from a time beginning one year after the Implementation Date and concluding when EBS has completed this undertaking, EBS will pay Hormel 7.75% of the Net Sales (as defined in the Distribution Agreement) made directly or indirectly in the Territory under the Carbonell brand by any EBS Subsidiary, including the sales made by Group Koipe's present distributor in Florida or elsewhere. For avoidance of doubt, once the Carbonell trademark for the United States,

[3] One of the negotiators for EBS was Claude Sendowski, who was also apparently a member of Koipe's board of directors.

> excluding Florida, is brought into the Joint Venture, there will be no further payments due on account of any delay in arranging the contribution of the Florida business.

(Hormel Motion Ex. 1 ("LLC Agreement") § 21.23.)

The LLC Agreement was implemented on August 1, 1999, so EBS had until August 1, 2000 to cause Koipe to transfer the Carbonell brand to the LLC. As the one-year deadline approached, however, Cereol, which had by then succeeded to EBS's contractual obligations, told Hormel that it needed an extension. Hormel agreed to this extension and to subsequent extensions. On October 2, 2001, Koipe was the subject of an unsolicited take-over bid by a Spanish corporation, Sos Cuetara. On October 19, 2001, Cereol announced that it had agreed to sell its equity holding in Koipe to Sos Cuetara. Sos Cuetara purchased all of Koipe's shares, including those previously owned by the minority shareholders.

On December 5, 2001, Hormel sued to enjoin EBS, Cereol, and Koipe from transferring the Carbonell brand to Sos Cuetara as part of that company's purchase of Koipe stock. This Court denied that motion. *See Hormel Foods Corp. v. Cereol, S.A.*, Civ. No. 01-2243, 2001 WL 1640037 (D. Minn. Dec. 18, 2001). Hormel amended its Complaint on February 4, 2002 to incorporate the present claims against defendants.

## ANALYSIS

### I. Hormel's Motion to File Second Amended Complaint

Hormel now moves to file a Second Amended Complaint, arguing that such an amendment is needed to add and clarify claims against Koipe and to reflect events that occurred after the First Amended Complaint was filed. Specifically, Hormel wishes to

clarify that its claims against Koipe are based upon Koipe's direct actions, not those imputed from Cereol. Hormel also seeks to change its anticipatory breach claim to one of actual breach, and wishes to clarify its allegations of fraud. Koipe opposes the motion, arguing that it would cause Koipe prejudice and would be futile.

Rule 15(a) of the Federal Rules of Civil Procedure mandates that leave to amend be granted liberally, whenever "justice so requires." *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998); *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 539-40 (8th Cir. 1977). Such leave should not be granted, however, if the party opposing amendment can show prejudice. *Bell*, 160 F.3d at 454; *Beeck*, 562 F.2d at 540. A Court should also deny leave to amend if the proposed changes would not save the complaint from being defeated by a motion for summary judgment or a motion to dismiss. *Humphreys v. Roche Biomedical Laboratories, Inc.*, 990 F.2d 1078, 1082 (8th Cir. 1993); *Weimer v. Amen*, 870 F.2d 1400, 1407 (8th Cir. 1989); *Collyard v. Washington Capitals*, 477 F. Supp. 1247, 1249 (D. Minn. 1979).

The Court first finds that Koipe has not met its burden of showing that Hormel's proposed amendment would cause it any prejudice. Koipe claims that it will be prejudiced by continuing to litigate a case which, it feels, is improperly brought. Koipe further notes that it is a foreign company and is litigating this case far from home. Although litigation certainly burdens all parties, the burdens that Koipe describes are not extraordinary or unusual in litigation of this sort, and the Court finds that its contentions do not rise to the level of prejudice.

Koipe's stronger argument is that Hormel's proposed Second Amended Complaint is futile, because the new complaint could not survive a motion to dismiss. Specifically, Koipe claims that the changes in the Second Amended Complaint are not new, but rather were known to Hormel all along, and that Hormel has alleged no additional facts that would entitle it to relief.

Koipe has submitted a variety of supplemental materials with its motions. It has taken pains to state, however, that these materials belong with its motion to dismiss for lack of personal jurisdiction, and that it does not want the Court to convert its 12(b)(6) motion into one for summary judgment. Under Rule 12(b)(6), the Court should not dismiss Hormel's complaint for failure to state a claim "unless it appears beyond doubt that [Hormel] can prove no set of facts in support of [its] claim that would entitle [it] to relief." *North Arkansas Medical Ctr. v. Barrett*, 962 F.2d 780, 784 (8th Cir. 1992) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). After examining the pleadings and considering the parties' arguments, it is clear to this Court that Hormel's complaint against Koipe is not well-supported. Nevertheless, under the 12(b)(6) standard, Hormel need not make the same strong showing that is required to avoid summary judgment. The Second Amended Complaint clearly contains factual allegations and legal claims that, if proved, would entitle Hormel to relief. (*See, e.g.* Proposed Second Amended Complaint at ¶¶ 14-16, 29, 37, 40-41, 45-46, 55-56.) These allegations, while not overwhelming, are sufficient to prevent this Court from finding "beyond a doubt" that Hormel can prove no set of facts that entitle it to relief. Therefore, because the Court

finds that Hormel's Second Amended Complaint would not be futile, the motion to amend will be granted.

## II. Cereol's Motion to Dismiss[4]

### A. Applicability of Arbitration Provision

Cereol argues that an arbitration provision in the LLC Agreement covers this dispute, and thereby deprives the Court of jurisdiction over this case.[5]

The LLC Agreement provides in part:

> **All disputes hereunder that cannot be resolved by the Members between themselves** shall be decided by arbitration in London in the English language pursuant to the Rules of Conciliation and Arbitration of the International Chamber of Commerce then in effect by arbitrators appointed in accordance with the said Rules.

(LLC Agreement § 21.10) (emphasis added). The LLC Agreement defines its "Members" as Hormel, Carapelli-Italy, and Carapelli, Inc. (LLC Agreement at 4.) EBS – the parent company of Carapelli-Italy and Carapelli, Inc. – was a party to the contract, but was not defined as a "Member."

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, was enacted in 1925 to reverse "longstanding judicial hostility to arbitration agreements" that existed at English common law and in American courts. *EEOC v. Waffle House, Inc.*, 122 S. Ct. 754, 761 (2002); *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th

---

[4] Because Cereol and Cereol Participations have merged, the Court will hereinafter refer only to Cereol.

[5] Federal courts may treat motions to compel arbitration as motions to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *See* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice & Procedure: Federal Rules of Civil Procedure* 2d § 1360 (Supp. 2002).

Cir. 1999). The United States Supreme Court has repeatedly held that the FAA manifests a "liberal federal policy favoring arbitration agreements." *Id.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Courts have implemented this policy by resolving ambiguities in the scope of arbitration clauses in favor of arbitration. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995); *Volt Info. Serv., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). "However, the FAA's pro-arbitration policy does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." *Keymer*, 169 F.3d at 504; *Mastrobuono*, 514 U.S. at 57; *Volt*, 489 U.S. at 479. Thus, although the FAA "directs courts to place arbitration agreements on equal footing with other contracts, . . . it does not require parties to arbitrate when they have not agreed to do so." *Waffle House*, 122 S. Ct. at 764 (quoting *Volt*, 489 U.S. at 478) (quotation marks omitted).

The arguments on this motion center around interpretation of the phrase "all disputes hereunder" and the term "Members." Cereol contends that the phrase "all disputes hereunder" bars the present litigation, because it requires the dispute between Cereol (as EBS's successor) and Hormel to be arbitrated. Cereol is not arguing that it should be considered a "Member," but rather that the LLC Agreement occasionally uses the term "Member" to refer to all parties to the Agreement. For example, Cereol points to the LLC Agreement's section on "Governing Law." This section provides that the "Agreement and the rights and obligations of the Members" shall be governed by

Delaware law. (LLC Agreement § 21.10.) Cereol notes that even though Hormel agrees Cereol is not a "Member," Hormel still cites this section when alleging that Delaware law governs this lawsuit against Cereol. Cereol therefore argues that the term "Members" must refer to entities besides the three LLC participants.

Cereol claims that this inconsistency is the result of hasty draftsmanship, explaining that EBS was originally scheduled to play no role in the LLC. Prior to final drafting, however, the provision was added that required EBS to transfer the Carbonell brand from Koipe to the LLC. Cereol claims that "the remainder of the Agreement was not amended to account for the fact that Cereol was **now a party but not a member of the joint venture**, despite the clear intent for many provisions to apply to Cereol in its capacity as a party." (Cereol Reply Mem. at 9 n.4) (emphasis added). Therefore, Cereol contends that because other provisions of the Agreement use the term "Members" to include Cereol, the arbitration provision also covers disputes involving Cereol. Cereol also argues that this language is, at the very least, ambiguous, and that in the face of ambiguity the Court should defer to the "federal policy favoring arbitration." *Mastrobuono*, 514 U.S. at 62; *Keymer*, 169 F.3d at 504.

In response, Hormel first argues that Cereol is not a "Member" under the Agreement's plain text. This fact is undisputed, and does not actually address Cereol's contentions. As noted above, Cereol does not claim to be a "Member" of the LLC. Rather, Cereol argues that the Agreement sometimes uses the term "Member" to refer to all parties to the LLC Agreement, one of which was EBS/Cereol. Therefore, the crucial

question is not whether Cereol is a "Member," but whether the present lawsuit qualifies as one of the "disputes hereunder." (*See* LLC Agreement § 21.10.)

Hormel next argues that this lawsuit is not such a dispute, and that the Agreement's language is not ambiguous. Hormel contends that the Agreement's arbitration provision governs only day-to-day business disputes between LLC Members. The arbitration provision does not apply, Hormel claims, to broader "foundational promises" that underlie the LLC Agreement. Hormel contends that EBS's only role in the LLC Agreement was to make such "foundational promises," particularly, that it would cause Koipe to transfer the Carbonell brand or make payments if the transfer failed. Hormel thus disputes Cereol's claim that EBS was not envisioned as part of the LLC Agreement, arguing instead that the Agreement provided EBS with an explicit, but limited, role.

To decide this motion, the Court cannot merely rely on a general "federal policy favoring arbitration." This would mischaracterize the FAA's underlying policy, which does not encourage arbitration for its own sake, but aims to "guarantee[] the enforcement of private contractual arrangements." *Waffle House*, 122 S. Ct. at 764 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985)). Accordingly, the Court must first examine whether the parties to the LLC Agreement agreed to arbitrate this kind of dispute. *Id.*

This dispute is not simply over ambiguities in the Agreement's language, but rather a broader question of the parties' intent. *See Volt*, 489 U.S. at 479 ("Arbitration . . . is a matter of consent, not coercion."). The Agreement's language clearly

demonstrates that the parties intended disputes between the "Members"[6] to be arbitrated. It is not clear, however, whether the parties intended a dispute like this one – between a party (but non-Member) and an LLC Member – to be arbitrated. The Court finds no ambiguity on this question, but rather a void. Neither the Agreement nor the evidence provides a clear picture of the parties' intentions. Although the federal policy favoring arbitration is undeniable, "nothing in the [FAA] authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement." *Waffle House*, 122 S. Ct. at 762. *See Keymer*, 169 F.3d at 504 ("a party cannot be forced to submit to arbitration any dispute that he has not agreed to submit"). The Court finds that the Agreement is silent as to this type of dispute, and the Court will not force arbitration when it cannot determine whether the parties intended the dispute to be arbitrated. Cereol's motion to dismiss will therefore be denied.

## III. Koipe's Motions to Dismiss

### A. Failure to State a Claim

As discussed in Part I, the Court has determined that Hormel may file its Second Amended Complaint because it alleges sufficient facts upon which relief can be granted. Therefore, Koipe's motion under Rule 12(b)(6) will be denied.

---

[6] Again, neither side claims that EBS/Cereol is a "Member" of the LLC.

**B. Lack of Personal Jurisdiction**

Koipe also moves to dismiss this action under Rule 12(b)(2) of the Federal Rules of Civil Procedure. To survive this motion, Hormel need only establish a prima facie case of personal jurisdiction, in which all factual conflicts are resolved in favor of the nonmoving party, Koipe. *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir. 1994); *Digi-Tel Holdings, Inc. v. Proteq Telecommunications., Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

Courts in the Eighth Circuit are "guided by two primary rules" when determining whether they have personal jurisdiction over a non-resident defendant. *Id.* First, the facts must satisfy the forum state's long-arm statute, and second, the exercise of personal jurisdiction must not violate due process. *Id.* Minnesota's long-arm statute extends jurisdiction to the fullest extent permitted by the U.S. Constitution. Minn. Stat. § 543.19; *Soo Line R.R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir. 1991). The only question, therefore, is whether due process permits the exercise of personal jurisdiction over Koipe.

The Due Process Clause requires that the defendant have "minimum contacts" with the forum such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Sufficient contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). In assessing the defendant's reasonable anticipation, there must be "some act by

which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (citation omitted).

Most of Koipe's arguments supporting dismissal are aimed at Hormel's First Amended Complaint. To the extent these arguments had merit when considering that pleading, the Court finds that the Second Amended Complaint has cured enough defects so that Hormel has now made a prima facie showing of personal jurisdiction.

Hormel's original allegations against Koipe primarily attribute the actions of EBS, then Koipe's parent company, to its subsidiary Koipe. Koipe responded that Hormel did not satisfy the standards for attributing contacts of a parent company to its subsidiary. Koipe further argued that Hormel did not allege sufficient facts specifically aimed at Koipe, and had not alleged that Koipe purposely availed itself of Minnesota's laws.

Now, however, as the Court has already determined, the Second Amended Complaint does allege that Koipe itself took actions which, if proved, would subject it to liability. The Court thus finds that, to the extent Koipe's jurisdictional arguments would have succeeded against Hormel's First Amended Complaint, they have been addressed and resolved by the Second Amended Complaint. Hormel's amended allegations demonstrate the minimum contacts required for a prima facie case of personal jurisdiction.[7] Therefore, the Court will deny Koipe's motion to dismiss.

---

[7] Koipe further challenges jurisdiction with materials submitted under its Motion to Supplement the Record. These are minutes from a July 23, 1999 meeting of Koipe's board of directors. (*See* Arends Aff. to Motion to Supp.). Koipe points to discussion at the meeting of a possible acquisition of Carapelli, and of the LLC and Koipe's obligations involving the

(Footnote continued on next page.)

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Leave to Supplement its Response [Docket No. 76] is **GRANTED**.

2. Plaintiff's Second Motion for Leave to Supplement its Response [Docket No. 80] is **GRANTED**.

3. Defendant Koipe Sociedad Anonima's Motion to Supplement the Record [Docket No. 99] is **GRANTED**.

4. Plaintiff's Motion to File Second Amended Complaint [Docket No. 66] is **GRANTED**.

---

(Footnote continued.)
Carbonell brand. According to Koipe, the minutes reveal that the Koipe board did not know about the expected transfer of Carbonell under the LLC Agreement until this meeting, which took place several months after the Agreement was executed.

Even if the factual questions raised by these new materials are resolved in Koipe's favor – as they must be for this motion – it is not clear how they undermine Hormel's prima facie case of personal jurisdiction. At most, the minutes suggest that the Koipe board was not familiar with all the details of the LLC Agreement, particularly how it would affect Koipe's handling of the Carbonell brand. While these facts might strongly favor Koipe in a summary judgment proceeding, they do not have the same impact when the Court is analyzing personal jurisdiction.

Koipe's submissions do not change Hormel's factual allegations that Koipe's representatives – Clyde Sendowski and Aldo Marsegaglia – made certain promises, directed at Minnesota, on behalf of Koipe. These allegations may yet be proven false through further discovery or at trial. Nevertheless, the Court's present role is not to determine the substantive merits of Hormel's claim, but merely to determine whether it has demonstrated the requisite minimum contacts with Minnesota to authorize jurisdiction. Koipe's submissions, while adding more to the substantive picture, do not undermine the sufficiency of Hormel's pleading. The Court therefore finds that Hormel's allegations remain sufficient to establish a prima facie case of jurisdiction.

5. Defendants Cereol, S.A. and Cereol Participations' Motion to Dismiss [Docket No. 31] is **DENIED**.

6. Defendant Koipe Sociedad Anonima's Motion to Dismiss [Docket No. 28] is **DENIED**.

DATED: September 30, 2002
at Minneapolis, Minnesota.

John R. Tunheim

JOHN R. TUNHEIM
United States District Judge